# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SIMEON ANTONIO CASTILLO-PEREZ, | : | Civil No. 1:20-CV-02271 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| CRAIG A LOWE, *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

This is an immigration habeas corpus case that is currently before the court on a motion for temporary restraining order filed by Petitioner Simeon Antonio Castillo-Perez ("Castillo-Perez"). Castillo-Perez, who is currently detained in the Pike County Correctional Facility ("PCCF") pending his removal from the country, seeks a temporary restraining order mandating his release from detention both because he currently has COVID-19 and because his detention has become unreasonably prolonged. For the reasons that follow, the motion for temporary restraining order is denied.

### BACKGROUND AND PROCEDURAL HISTORY[1]

Castillo-Perez is a 48-year-old native and citizen of the Dominican Republic who first came to the United States in 2001 and has lived in the country since that

---

[1] Because Respondents have not yet responded to Castillo-Perez's petition, the facts in this section are derived from the petition, the motion for temporary restraining order, and the exhibits attached to that motion.

date.  (Doc. 1 ¶ 1.)  On October 21, 2005, Castillo-Perez married a United States citizen named Julie Landro ("Landro"), and they subsequently had a child together.  (*Id.* ¶ 13.)  Landro subjected Castillo-Perez to domestic violence throughout their marriage.  (*Id.*)  Since 2013, Castillo-Perez has been living with his fiancée, a United States citizen named Chantelley Bourdier ("Bourdier").  (*Id.* ¶ 14.)  Castillo-Perez and Bourdier have four children together.  (*Id.*)

In or around June 2010, Castillo-Perez was arrested and placed into removal proceedings based on charges relating to controlled substances.  (*Id.* ¶ 15.)  Castillo-Perez later learned that Landro had made false allegations about him to police, which led to the arrest and charges.  (*Id.*)  The charges against Castillo-Perez were eventually dismissed and his record was expunged.  (*Id.*)

In April 2014, Castillo-Perez suffered serious injuries to his neck, back, face, teeth, and testicles when he fell off a scaffold while performing construction work.  (*Id.* ¶ 16.)  As a result of the injuries, he had to undergo three major surgeries on his spine, testicles, and left ankle.  (*Id.*)

In early 2016, Castillo-Perez retained an attorney to represent him during his removal proceedings.[2]  (*Id.* ¶ 17.)  Castillo-Perez subsequently contacted the attorney prior to an individual hearing that was scheduled for February 2, 2017,

---

[2] Castillo-Perez is represented by different counsel in the instant case.

and informed the attorney that he was feeling ill.  (*Id.* ¶ 19.)  The attorney informed Castillo-Perez that he would not need to attend because the attorney would be there on his behalf.  (*Id.*)  Despite this promise, the attorney did not attend, and the hearing was conducted with neither Castillo-Perez nor his counsel present.  (*Id.*)  During the hearing, an Immigration Judge ordered that Castillo-Perez be removed from the United States.  (*Id.* ¶ 20.)  On August 14, 2020, Castillo-Perez was arrested by United States Immigration and Customs Enforcement ("ICE") and detained in PCCF.  (*Id.* ¶ 21.)  He has been detained since that date pursuant to the removal order issued in 2017.  (*Id.*)

Castillo-Perez filed a motion to reopen his removal case and to stay his removal with an Immigration Judge on August 24, 2020, but the motion was denied on October 2, 2020.  (*Id.* ¶ 22.)  He seeks relief in his motion as a battered spouse under the terms of the Violence Against Women Act ("VAWA").  (*See id.* ¶ 37.)  Castillo-Perez appealed the denial of the motion to the Board of Immigration Appeals on October 6, 2020, and is currently awaiting a decision.  (*Id.* ¶¶ 23–24.)  Castillo-Perez requested release from detention on September 29, 2020, but his request was denied on November 4, 2020, when an ICE deputy field officer concluded that he posed a flight risk.  (*Id.* ¶¶ 25–26.)

On November 27, 2020, Castillo-Perez was diagnosed with COVID-19 while in custody at PCCF.  (*Id.* at 2.)  Since that time, he has experienced several

symptoms from the virus, including a fever of up to 100.4 degrees, difficulty breathing and talking, constant chest pain, constant coughing, and a complete loss of his senses of taste and smell. (Castillo-Perez Affidavit ¶ 10, Doc. 3-1 at 23.)

On December 4, 2020, Castillo-Perez initiated this case through the filing of a petition for writ of habeas corpus. (Doc. 1.) On the same date, Castillo-Perez also filed the instant motion for temporary restraining order and a brief in support of the motion. (Docs. 2–3.) The court has not yet ordered Respondents to respond to the petition or the motion.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 65 allows a district court to enter preliminary injunctive relief, which includes both preliminary injunctions and temporary restraining orders. To obtain preliminary injunctive relief, a petitioner must establish (1) that he is likely to prevail on the merits of the case; (2) that he would suffer irreparable harm if preliminary injunctive relief were denied; (3) that the harm respondents would suffer from the issuance of an injunction would not outweigh the harm he would suffer if an injunction were denied; and (4) that the

public interest weighs in favor of granting the injunction. *Holland v. Rosen*, 895 F.3d 272, 285–86 (3d Cir. 2018) (citing *Del. Strong Families v. Att'y Gen. of Del.*, 793 F.3d 304, 308 (3d Cir. 2015)). The first two factors are "gateway factors": if the petitioner has not established those factors, the court need not consider the last two factors. *Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020) (quoting *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017)). If the plaintiffs do establish the first two factors, "[t]he court then determines 'in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.'" *Id.* (quoting *Reilly*, 858 F.3d at 179).

A movant has a particularly heavy burden when seeking mandatory injunctive relief, that is, injunctive relief that would alter, rather than preserve, the status quo. *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020) (citing *Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994)). To obtain a mandatory preliminary injunction, the movant must show that his right to relief is "indisputably clear." *Id.* (quoting *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013)). The movant must also "meet a higher standard of showing irreparable harm in the absence of an injunction." *Bennington Foods LLC v. St. Croix renaissance, Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008). Given these significant burdens, a court should exercise its power to issue a mandatory

preliminary injunction "sparingly." *Trinity Indus.*, 735 F.3d at 139 (quoting *United States v. Spectro Food Corp.*, 544 F.2d 1175, 1181 (3d Cir. 1976)).

Furthermore, a preliminary injunction is "an extraordinary remedy never awarded as of right." *Benisek v. Lamone*, 585 U.S. __, 138 S. Ct. 1942, 1943 (2018) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Thus, a preliminary injunction should only be awarded in the "limited circumstances" where "the movant, by a clear showing, carries the burden of persuasion." *Holland*, 895 F.3d at 285. Ultimately, the decision of whether to issue preliminary injunctive relief is left to the sound discretion of the district court. *Pennsylvania v. President of United States*, 930 F.3d 543, 565 (3d Cir. 2019) (citing *Winter*, 555 U.S. at 24).

## DISCUSSION

### A. Castillo-Perez's COVID-19 Claim

The court will first analyze Castillo-Perez's argument that he should be granted preliminary injunctive relief based on his positive diagnosis for COVID-19. Castillo-Perez's claim is grounded in the Due Process Clause of the Fifth Amendment. (*See* Doc. 3-1 at 12.) Because the court concludes that Castillo-Perez has not shown a sufficient likelihood of success on the merits of this claim, the court will deny the request for preliminary injunctive relief.

A civil immigration detainee is entitled to the same due process protections as a pretrial detainee under the Fifth Amendment. *Hope*, 972 F.3d at 325 (citing *E.D. v. Sharkey*, 928 F.3d 299, 306–07 (3d Cir. 2019)). Habeas corpus cases in which a civil immigration detainee alleges a violation of his Fifth Amendment rights arising from COVID-19 are generally based on two "separate but related theories": first, that the petitioner's risk of exposure to COVID-19 amounts to punishment, and second, that the detention facility's COVID-19 policies amount to deliberate indifference to a serious medical need. *Id.*

Under either theory, a court considering whether a petitioner is entitled to habeas corpus relief based on COVID-19 should consider "(1) whether the petitioner has been diagnosed with COVID-19 or is experiencing symptoms consistent with the disease; (2) whether the petitioner is among the group of individuals that is at higher risk of contracting COVID-19; (3) whether the petitioner has been directly exposed to COVID-19; (4) the physical space in which the petitioner is detained, and how that physical space affects his risk of contracting COVID-19; (5) the efforts that the prison has made to prevent or mitigate the harm caused by COVID-19; and (6) any other relevant factors." *Saillant v. Hoover*, 454 F. Supp. 3d 465, 471 (M.D. Pa. 2020). "It is not enough for a petitioner to allege that he is detained and presented with a risk of contracting COVID-19 that is common to all prisoners. Rather, the petitioner must make an

7

individualized showing that he is entitled to habeas corpus relief when considering the above factors." *Id.* (citing *Verma v. Doll*, No. 4:20-CV-00014, 2020 WL 1814149, at *5–7 (M.D. Pa. Apr. 9, 2020)).

The analysis is altered, where, as here, a petitioner has already contracted COVID-19, as the adequacy of the detention facility's prevention efforts is no longer relevant to the court's analysis of whether injunctive relief should issue. *Camacho Lopez v. Lowe*, 452 F. Supp. 3d 150, 160–61 (M.D. Pa. 2020). Once a petitioner has contracted COVID-19, the focus of the injunctive relief analysis is whether the detention facility is adequately treating the petitioner's condition. *Id.* at 161.

In this case, Castillo-Perez asserts that he is at increased risk of death or serious health complications from COVID-19 because he has recently undergone several surgeries and because of the "inadequate therapeutic support" and "generally poor conditions" within PCCF. (Doc. 3-1 at 7.) Castillo-Perez asserts that the risk to him is "obvious" because COVID-19 has "already spread" inside PCCF, and because he is "suffering from serious medical conditions and excruciating pain which is exacerbated by inadequate and poor conditions at the detention facility." (*Id.* at 8.)

Castillo-Perez's argument that he is entitled to preliminary injunctive relief based on COVID-19 fails because he has not alleged that PCCF is providing

inadequate treatment for his condition. Although Castillo-Perez alleges that the conditions in PCCF are "inadequate" and "poor," such allegations go to the facility's prevention efforts and are irrelevant to determining whether a petitioner who has already contracted COVID-19 is entitled to preliminary injunctive relief. *Camacho Lopez*, 452 F. Supp. 3d at 160–61. Castillo-Perez has not alleged that PCCF is providing inadequate medical care to treat his COVID-19 infection, and absent such an allegation he has failed to show that he has a likelihood of success on the merits. *See id.*; *see also Mbewe v. Doll*, No. 1:20-CV-01556, 2020 WL 7027599, at *5 n.1 (M.D. Pa. Nov. 30, 2020) (concluding that petitioner who had contracted COVID-19 was not entitled to release because he "fails to assert that he displayed any serious symptoms and/or failed to receive medical care for such"); *cf. Umarbaev v. Lowe*, 453 F. Supp. 3d 698, 709 (M.D. Pa. 2020) (concluding that petitioner who had been placed in quarantine for possible COVID-19 exposure was not entitled to release where nothing in the record indicated that the facility had been deliberately indifferent to a serious medical need). This is particularly true when considering that Castillo-Perez is seeking a mandatory injunction and thus must have an "indisputably clear" right to relief to obtain preliminary injunctive relief. *Hope*, 972 F.3d at 320.

    The court is sympathetic to Castillo-Perez's condition and the symptoms he is experiencing from COVID-19, and wishes him a speedy and full recovery from

the virus. The court remains bound, however, by the standard of review governing motions for preliminary injunctive relief, and on the record before the court, Castillo-Perez has not met his burden to show that he is likely to prevail on the merits of his claim. The court will accordingly deny the motion for temporary restraining order to the extent that it is based on COVID-19 and will not address the remaining elements of the preliminary injunctive relief analysis as to that claim.

### B. Castillo-Perez's Length of Detention Claim

The court will next address Castillo-Perez's claim that he should be granted a temporary restraining order because his detention has become unreasonably prolonged. Because Castillo-Perez has been ordered removed from the country and has been detained for more than ninety days pursuant to his removal order, his detention is governed by 8 U.S.C. § 1231(a)(6). Under that statute, a detainee may be detained beyond the 90-day removal period set forth in § 1231(a)(1)(A) if he "has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6).

Although § 1231(a)(6) does not contain any explicit limit on the amount of time that a detainee may be detained after his final removal order, the Supreme Court has recognized that detention under § 1231(a)(6) may become unlawful when it continues beyond "a period reasonably necessary to secure [the detainee's]

removal." *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). In *Zadvydas*, the Court recognized that detention for up to six months after a final removal order is presumptively reasonable. *Id.* at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

In this case, Castillo-Perez has failed to show a sufficient likelihood of success on the merits to obtain preliminary injunctive relief. According to Castillo-Perez's petition, he has been detained for approximately four months pending his removal from the country. (Doc. 1 at 2.) Detention for that length of time is presumptively reasonable under *Zadvydas*. 533 U.S. at 701. Although Castillo-Perez may be able to overcome that presumption of reasonableness and obtain a permanent injunction, the fact that he would need to overcome the presumption shows that his right to relief is not "indisputably clear" as required to obtain mandatory preliminary injunctive relief. *Hope*, 972 F.3d at 320. Accordingly, because Castillo-Perez has not shown a sufficient likelihood of success on the merits, the court will deny the motion for temporary restraining order without considering the remaining elements of the preliminary injunctive relief analysis.

## CONCLUSION

For the foregoing reasons, Castillo-Perez's motion for temporary restraining order is denied. The denial of this motion is without prejudice to Castillo-Perez's right to file a renewed motion for temporary restraining order if the circumstances surrounding his COVID-19 infection change in such a way as to give him cause to allege deliberate indifference to a serious medical need. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: December 7, 2020