**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SIMEON ANTONIO CASTILLO-PEREZ, | : : : | Civil No. 1:20-CV-02271 |
| Petitioner, | : : | |
| v. | : : | |
| CRAIG A LOWE, *et al.*, | : : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

This is an immigration habeas corpus case under 28 U.S.C. § 2241 in which the petitioner, Simeon Antonio Castillo-Perez ("Castillo-Perez"), seeks habeas corpus relief based on the length of his detention and the risks posed by COVID-19. For the reasons that follow, the court denies the petition for writ of habeas corpus without prejudice.

### BACKGROUND AND PROCEDURAL HISTORY

Castillo-Perez is a 48-year-old native and citizen of the Dominican Republic who first came to the United States in 2001 and has lived in the country since that date. (Doc. 1 ¶ 1.) On October 21, 2005, Castillo-Perez married a United States citizen named Julie Landro ("Landro"), and they subsequently had a child together. (*Id.* ¶ 13.) Landro subjected Castillo-Perez to domestic violence throughout their marriage. (*Id.*) Since 2013, Castillo-Perez has been living with his fiancée, a

1

United States citizen named Chantelley Bourdier ("Bourdier").  (*Id.* ¶ 14.)
Castillo-Perez and Bourdier have four children together.  (*Id.*)

In or around June 2010, Castillo-Perez was arrested and placed into removal
proceedings based on charges relating to controlled substances.  (*Id.* ¶ 15.)
Castillo-Perez later learned that Landro had made false allegations about him to
police, which led to the arrest and charges.  (*Id.*)  The charges against Castillo-
Perez were eventually dismissed and his record was expunged.  (*Id.*)

In April 2014, Castillo-Perez suffered serious injuries to his neck, back, face,
teeth, and testicles when he fell off a scaffold while performing construction work.
(*Id.* ¶ 16.)  As a result of the injuries, he had to undergo three major surgeries on
his spine, testicles, and left ankle.  (*Id.*)

In early 2016, Castillo-Perez retained an attorney to represent him during his
removal proceedings.[1]  (*Id.* ¶ 17.)  Castillo-Perez subsequently contacted the
attorney prior to an individual hearing that was scheduled for February 2, 2017,
and informed the attorney that he was feeling ill.  (*Id.* ¶ 19.)  The attorney told
Castillo-Perez that he would not need to attend because the attorney would be there
on his behalf.  (*Id.*)  Despite this promise, the attorney did not attend, and the
hearing was conducted with neither Castillo-Perez nor his counsel present.  (*Id.*)

---

[1] Castillo-Perez is represented by different counsel in the instant case.

During the hearing, an Immigration Judge ("IJ") ordered that Castillo-Perez be removed from the United States.  (*Id.* ¶ 20.)  On August 14, 2020, Castillo-Perez was arrested by United States Immigration and Customs Enforcement ("ICE") and detained in Pike County Correctional Facility ("PCCF").  (*Id.* ¶ 21.)  He has been detained since that date pursuant to the removal order issued in 2017.  (*Id.*)

Castillo-Perez filed a motion to reopen his removal case and to stay his removal with an IJ on August 24, 2020, but the motion was denied on October 2, 2020.  (*Id.* ¶ 22.)  He seeks relief in his motion as a battered spouse under the terms of the Violence Against Women Act ("VAWA").  (*See id.* ¶ 37.)  Castillo-Perez appealed the denial of the motion to the Board of Immigration Appeals ("BIA") on October 6, 2020, and is currently awaiting a decision.  (*Id.* ¶¶ 23–24.)  He requested release from detention on September 29, 2020, but his request was denied on November 4, 2020, when an ICE deputy field officer concluded that he posed a flight risk.  (*Id.* ¶¶ 25–26.)

On November 27, 2020, Castillo-Perez was diagnosed with COVID-19 while in custody at PCCF.  (*Id.* at 2.)  He experienced several symptoms from the virus, including a fever of up to 100.4 degrees, difficulty breathing and talking, constant chest pain, constant coughing, and a complete loss of his senses of taste and smell.  (Castillo-Perez Affidavit ¶ 10, Doc. 3-1 at 23.)  Those symptoms had

subsided by December 2, 2020, when Castillo-Perez reported that he had no current symptoms from the virus and no new symptoms.  (*See* Doc. 8-1 at 91–92.)

On December 4, 2020, Castillo-Perez initiated this case through the filing of a petition for writ of habeas corpus.  (Doc. 1.)  On the same day, Castillo-Perez also moved for a temporary restraining order.  (Doc. 3.)  The court denied the motion for temporary restraining order on December 7, 2020.  (Docs. 5–6.)  The court found that Castillo-Perez did not have a sufficient likelihood of success on the merits of his claims because he had not alleged that PCCF had provided inadequate medical care for his COVID-19 infection and because the length of his detention was presumptively reasonable under *Zadvydas v. Davis*, 533 U.S. 678 (2001).  (Doc. 5.)  The court accordingly denied the motion and ordered Respondents to respond to the merits of Castillo-Perez's petition.  (Doc. 6.)  Respondents did so on December 26, 2020, and Castillo-Perez filed a traverse in support of his petition on January 9, 2021, making the petition ripe for the court's review.  (Docs. 8, 10.)

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.

**STANDARD OF REVIEW**

A United States district court may issue a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

**DISCUSSION**

**A. Castillo-Perez's COVID-19 Claim Is Denied Without Prejudice**

The court will first address Castillo-Perez's COVID-19 claim, which arises under the Due Process Clause of the Fifth Amendment.  A civil immigration detainee is entitled to the same due process protections as a pretrial detainee under the Fifth Amendment.  *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020) (citing *E.D. v. Sharkey*, 928 F.3d 299, 306–07 (3d Cir. 2019)).  Habeas corpus cases in which a civil immigration detainee alleges a violation of his Fifth Amendment rights arising from COVID-19 are generally based on two "separate but related theories": first, that the petitioner's risk of exposure to COVID-19 amounts to punishment, and second, that the detention facility's COVID-19 policies amount to deliberate indifference to a serious medical need.  *Id.*

Under either theory, a court considering whether a petitioner is entitled to habeas corpus relief based on COVID-19 should consider "(1) whether the petitioner has been diagnosed with COVID-19 or is experiencing symptoms consistent with the disease; (2) whether the petitioner is among the group of

individuals that is at higher risk of contracting COVID-19; (3) whether the petitioner has been directly exposed to COVID-19; (4) the physical space in which the petitioner is detained, and how that physical space affects his risk of contracting COVID-19; (5) the efforts that the prison has made to prevent or mitigate the harm caused by COVID-19; and (6) any other relevant factors." *Saillant v. Hoover*, 454 F. Supp. 3d 465, 471 (M.D. Pa. 2020). "It is not enough for a petitioner to allege that he is detained and presented with a risk of contracting COVID-19 that is common to all prisoners. Rather, the petitioner must make an individualized showing that he is entitled to habeas corpus relief when considering the above factors." *Id.* (citing *Verma v. Doll*, No. 4:20-CV-00014, 2020 WL 1814149, at *5–7 (M.D. Pa. Apr. 9, 2020)).

The analysis is altered, where, as here, a petitioner has already contracted COVID-19, as the adequacy of the detention facility's prevention efforts is no longer relevant to the court's analysis of whether relief should issue. *Camacho Lopez v. Lowe*, 452 F. Supp. 3d 150, 160–61 (M.D. Pa. 2020). Once a petitioner has contracted COVID-19, the focus of the analysis is whether the detention facility is adequately treating the petitioner's condition. *Id.* at 161.

In this case, Castillo-Perez's COVID-19 claim fails because he has not alleged that PCCF provided inadequate treatment for his condition. Although Castillo-Perez alleges that the conditions in PCCF are "inadequate" and "poor,"

6

*see* Doc. 1 ¶ 41, such allegations go to the facility's prevention efforts and are irrelevant to determining whether a petitioner who has already contracted COVID-19 should be granted habeas corpus relief. *Camacho Lopez*, 452 F. Supp. 3d at 160–61. Castillo-Perez does not allege that PCCF provided inadequate medical care to treat his COVID-19 infection, and absent such an allegation he fails to show that he should be granted habeas corpus relief. *See id.*; *see also Mbewe v. Doll*, No. 1:20-CV-01556, 2020 WL 7027599, at *5 n.1 (M.D. Pa. Nov. 30, 2020) (concluding that petitioner who had contracted COVID-19 was not entitled to release because he "fails to assert that he displayed any serious symptoms and/or failed to receive medical care for such"); *cf. Umarbaev v. Lowe*, 453 F. Supp. 3d 698, 709 (M.D. Pa. 2020) (concluding that petitioner who had been placed in quarantine for possible COVID-19 exposure was not entitled to release where nothing in the record indicated that the facility had been deliberately indifferent to a serious medical need).

Castillo-Perez's claim is further weakened by the fact that his COVID-19 symptoms have subsided. (*See* Doc. 8-1 at 91–92.) His claim for relief was based on the assertion that he was "at serious risk of permanent damage or death" from the virus, *see* Doc. 1 ¶ 41, but it appears from the record that he has contracted the virus and has not suffered such consequences. Indeed, as of December 2, 2020,

Castillo-Perez had no symptoms from the virus.  (Doc. 8-1 at 91–92.)

Accordingly, the court will deny the COVID-19 claim without prejudice.

### B. Castillo-Perez's Length of Detention Claim Is Denied Without Prejudice

The court will next address Castillo-Perez's argument that he is entitled to a writ of habeas corpus because his detention has become unreasonably prolonged. Because Castillo-Perez has been ordered removed from the country and has been detained for more than ninety days pursuant to his removal order, his detention is governed by 8 U.S.C. § 1231(a)(6).  Under that statute, a detainee may be detained beyond the 90-day removal period set forth in 8 U.S.C. § 1231(a)(1)(A) if he "has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal."  8 U.S.C. § 1231(a)(6).

Although § 1231(a)(6) does not contain any explicit limit on the amount of time that a detainee may be detained after his final removal order, the Supreme Court has recognized that detention under § 1231(a)(6) may become unlawful when it continues beyond "a period reasonably necessary to secure [the detainee's] removal." *Zadvydas*, 533 U.S. at 699.  In *Zadvydas*, the Court recognized that detention for up to six months after a final removal order is presumptively reasonable. *Id.* at 701.  "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably

foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

The Third Circuit has also recognized this presumption, noting that individuals "detained under § 1231(a)(6) are only entitled to a bond hearing after *prolonged* detention," which means that a detainee "is generally entitled to a bond hearing after six months (*i.e.*, 180 days) of custody." *Guerrero-Sanchez v. Warden York Cty.*, 905 F.3d 208, 225–26 (3d Cir. 2018) (emphasis in original). A court considering whether a detainee's detention has become prolonged should weigh three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 225 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 355 (1976)).

In this case, Castillo-Perez has been detained under § 1231(a)(6) since August 14, 2020, *see* Doc. 1 ¶ 21, a period of approximately five months. His detention is therefore presumptively reasonable under *Zadvydas* and *Guerrero-Sanchez*. Castillo-Perez nonetheless argues that his continued detention is unreasonable when considering the above factors. He first argues that the private interest at stake "is profound" because (1) he is subject to an automatic stay of

9

removal pending his claim for relief under VAWA, which could result in a delay of "several months or more likely several years before exhaustion of all his appeals"; (2) he is at risk of harm from COVID-19; and (3) his detention is causing his family significant financial and emotional distress.  (Doc. 1 ¶¶ 36–43.)  Second, he argues that there is a high risk of an erroneous deprivation of liberty because ICE has afforded him "a grossly inadequate procedure" regarding his detention.  (*Id.* ¶ 44.)  Finally, he argues that the government interest in continuing his detention is "minimal at best" because there is a chance that his motion to reopen his removal proceedings will succeed.  (*Id.* ¶¶ 52–53.)

Having reviewed Castillo-Perez's petition under the factors set forth in *Mathews* and *Guerrero-Sanchez*, the court concludes that Castillo-Perez is not entitled to a writ of habeas corpus at this time.  Castillo-Perez's assertion that the private interest at stake is "profound" is based primarily on the potential for significant delays in his removal proceedings and the risks posed by COVID-19. Detainees, however, are only entitled to bond hearings under § 1231(a)(6) when their detention has *already* become prolonged, *see Guerrero-Sanchez*, 905 F.3d at 225 ("aliens detained under § 1231(a)(6) are only entitled to a bond hearing after *prolonged* detention"), and this court has already determined that the risks posed by COVID-19 are not a sufficient basis to grant Castillo-Perez's petition.  The only other private interest Castillo-Perez notes is the financial and emotional distress

that his detention has caused his family, and while the court does not discount this factor, the stress suffered by a detainee's family standing alone does not outweigh the government's interest in continuing a detention that is otherwise lawful under § 1231(a)(6).

The court also rejects Castillo-Perez's contention that ICE has a "grossly inadequate procedure" for reviewing a detainee's detention.  Federal regulations provide for several reviews of a detainee's custody status, *see* 8 C.F.R. § 241.4, and Castillo-Perez has also had the opportunity to challenge his removal through proceedings before an IJ and the BIA.  In light of these procedural safeguards, the private and public interests at stake, and the presumption that his detention is reasonable, *see Zadvydas*, 533 U.S. at 701, the court finds that Castillo-Perez is not entitled to habeas corpus relief at this time.  The court will therefore deny the petition for writ of habeas corpus without prejudice to Castillo-Perez's right to renew the petition if his detention becomes unreasonable.

## CONCLUSION

For the foregoing reasons, Castillo-Perez's petition for writ of habeas corpus is denied without prejudice.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: January 22, 2021